Our next case this morning is Calvin Choice v. Kohn Law Firm, Mr. Cassano. May it please the Court, Mario Cassano on behalf of appellant Calvin Choice. I would like to reserve three minutes for rebuttal. This appeal stems from a dismissal of a case filed under the provisions of the FDCPA for lack of Article III standing. Specifically, plaintiff alleged that defendant's statement that an unspecified figure of statutory attorney fees are due and owing violates the FDCPA since statutory attorney fees do not exist in Illinois in a debt collection lawsuit context. Mr. Cassano, I want to focus in on the first amendment complaint. Specifically, juxtaposing paragraph, I think it's 64, with some of the paragraphs later, 76, 80, 81. What I'm wondering is whether those allegations are contradictory. Has he, has Mr. Choice made an allegation that he decided to contest the debt even in the absence of the alleged misstatements about the attorney's fees? I think, ultimately, he went through the spectrum of beliefs. Because the complaint, the collection complaint, had inconsistent statements, he had inconsistent beliefs. He didn't know what was true. In other words, in one part of the complaint, there was a prayer for relief for statutory attorney fees. In another part of the complaint, the affidavit specifically, it states that no other charges are being sought. So, he didn't know what to think. So, we know under Brunette that confusion is not enough. There's got to be some detrimental step. Yes. The question would be, was he able to take a detrimental step if there's no concrete language as to what he would have done? Well, he did allege very clearly that he would have resolved the debt. In other words, if he would have resolved the debt, he wouldn't have had to pay an appearance fee. He wouldn't have had to hire counsel. He wouldn't have had to spend time and energy in doing so. So, that is the detrimental step. That is the harm. Had he been told the truth that this is what he owes and he doesn't owe some further unspecified amount, that would be it. He wouldn't have to spend extra money, which could have gone toward resolution of the debt. Well, if that was clear, though, why? I mean, these aren't alternative pleadings. It's not as if the paragraph in the First Amendment complaint says, and in the alternative, he takes the opposite position. The First Amendment complaint is just unclear as to what Mr. Choice's position in any concrete language is as to what he would have done. And how the attorney's fees would have changed that? Well, the attorney fees would have changed that because he didn't know how much he owed. And he thought he owed a lot more, which is ultimately, and that was one thing he believed, that's why he sought the advice of an attorney. He didn't know what to believe, ultimately. But had, but for the actions of the defendants, but for them stating that statutory attorney fees were due, he would have resolved it. And I think he's alleged that, even though he was also confused in a different manner regarding the other statements in the collection complaint. Like I said, there are two different versions in the collection complaint of what is owed. The affidavit says one thing, the 280.1 affidavit says one thing, and the prayer for relief says another. So I think he was reasonable in entertaining both and coming to different conclusions based on either. With respect to, plaintiff submits there was error for the district court to find that universally hiring an attorney cannot establish standing. This is because unlike the cases to which the court cites, plaintiff didn't just hire a lawyer merely to obtain an advisory opinion. For example, based on the letters in many of the cases decided by this court, like Pennell, like I believe it was Smith, Basil, Spuler, Gunn. Rather, in this situation, he, faced with a lawsuit that he had to defend, hired an attorney to defend against this false claim, this spurious claim of attorney fees, which he believed were very substantial. Specifically, he hired and paid a lawyer to defend against a false claim of statutory attorney fees. And this is a distinction recognized by this court in the case of Crabtree versus Experian, where the court expressly noted that the cost to defend a lawsuit can't be an injury in fact for purposes of Article III standing. The Seventh Circuit thus distinguished cases holding that a plaintiff may not satisfy standing by point to the cost of bringing suit, noting that the defendant had alleged that the harm is the cost of defending suit, not bringing it. And the court concluded that in Crabtree, in defending claims, the defendant has suffered a redressable injury in fact that is traceable to the plaintiff. As in Crabtree, plaintiff's alleged injury here is the cost of defending the lawsuit. Again, the attorney fees and the appearance fee. Specifically, he hired a lawyer to defend the action, which saw to some certain, plus attorney fees, alleged to be owed in some unknown amount. The fees were not owed, however, and plaintiff alleges he would have resolved the debt had he known the truth, which is that he owed nothing in fees. He was thus injured financially by having to pay an appearance fee, by having to pay an attorney, due to defendant's misrepresentation as to those fees. And his injury was also individual and particularized to him. He was affected. He's the one who had to pay the money. And his claim is also plausible, since his allegations, if true, would have saved the money. And this is a reasonable path to take, and therefore a plausible one. Second, with respect to the appearance fee, the court erred in not even considering plaintiff's allegation in the amended complaint that he paid an appearance fee and was harmed thereby. So even assuming arguendo that attorney fees, hiring an attorney to defend against a false claim, doesn't constitute concrete harm, plaintiff's payment of an appearance fee in a state collection action, which he alleged he wouldn't have paid had he known that the debt did not include attorney fees, does constitute a harm. And, per Crabtree, again, and the other cases cited, an appearance fee is a cost, he incurred, that establishes an injury in fact. As it was only occurred as a result of defendant's misrepresentation. And he alleged he wouldn't have paid it had he known the truth. He alleged that he would have sought to resolve the debt. Now, the defendants take the position that saying resolving the debt is speculative. What does that mean? Well, it's clear what that means because this court considered that same scenario in Cholumbat, another Seventh Circuit case that was decided fairly recently involving fairly similar facts. There, the court noted that because general allegations in a complaint are presumed to embrace the specific facts necessary to support those allegations, in this case, you know, him stating that he would have resolved the debt embraces the specific fact that he had the means to do so. So it wasn't speculative, his statement that he would have sought to resolve it. He would have done what was required to do, either pay the whole amount or if he was offered a lesser amount, he would have paid that. So that's a non-argument. And again, this is taken directly from the Cholumbat Seventh Circuit opinion entered not too long ago also on the issue of Article III standing. Moreover, the district court erred in finding that plaintiff's admission that he didn't suffer actual damages dooms his complaint. And I think a brief history is instructive here on the pleadings. Plaintiff originally filed his complaint before the slew of cases entered by this court regarding Article III standing. He alleged statutory damages only, and he responded to requests to admit. And in response to requests to admit, did you incur actual damages, he said no. And that was consistent with his pleading at the time. After this court entered a whole bunch of cases, I think it was Larkin, Bazeal, Spuler, Gunn, et al., plaintiff told the court that he wanted to amend to add allegations regarding, that would support Article III standing. And the court allowed amendment, and that's what plaintiff did. Plaintiff filed an amended complaint, and he alleged actual damages. Did he ever ask for relief under Rule 36? A withdrawal of amendment? Mm-hmm. He did not, Your Honor. For your admission. He didn't, and the reason he didn't was because almost immediately motions to dismiss based on lack of standing, I think it was 12B1 motions, were filed by each side, each defendant, I should say. And also, defendants filed a motion to stay discovery where they argue that discovery is irrelevant to the issue of Article III standing. And the court entered that motion, apparently adopting that position, immediately. For that reason, we thought that that signaled to us that the court's position was that this is just a facial attack, not a factual one, and the court would decide it on the allegations, not on the facts in discovery that are only in the record based on the previous version of the complaint. Also, plaintiff believed that allowing amendment to add actual damages was tantamount to allowing withdrawal of the request of the... That sounds like a heroic admission or assumption. Sorry, the request to admit. I'm sorry, Your Honor. It sounds like an heroic assumption. Well, it's supported by the case of Gardner, the Seventh Circuit case of Gardner, which had pretty similar facts, and that's what we believed. It wouldn't make sense to allow amendment to add a claim, a prayer for relief of actual damages, if plaintiff was barred from doing so. Defendant never took issue with the amendment. The court didn't take issue with the amendment. It was allowed to go forward, but discovery was not allowed to go forward on the amended complaint, and that wasn't fair. If the court was going to decide the case based on a factual attack, which it seemed to do, even though the memorandum opinion seemed to only address the standard for a facial attack, it should have allowed discovery to go forward and complete so that plaintiff could have gone in and filed a motion to withdraw the requested admission. But it didn't. It stayed discovery. And again, that signaled to us that discovery was irrelevant to the court's determination because it was only going to resolve the issue on the basis of a facial attack. Your time expired a long time ago. I'm sorry. Thank you. Mr. Schultz. Please court, counselor. My name is David Schultz. I represent Cone Law, as well as Captain Byler represents Unifund. He asked some questions and he followed up about how he would have paid. Okay, this is a factual situation instead of looking at the pleadings. And the facts that were demonstrated pretty clearly is for five years before the lawsuit was filed, he was subject to collection activity and didn't pay. When the lawsuit was filed, he has no evidence that he called anybody to make a payment. No evidence to say he tried to clear up any confusion. No evidence that the lawyer he hired called and said he'll pay the $3,000. For three years, the collection case went on. Not one fact is alleged that he intended to pay that debt. In fact, the allegations are absolutely contrary to that. He detached what he's filed in the state court. He denies the debt. Why is he going to sit here and say I would have paid the debt when he alleges he denies owing the debt? That makes no sense. It was not an injury. He's very clear. He was denying that he owed the money. He was denying that Unifund could prove it up. So an allegation, a few words that I would have paid but, is belied by the history of this and its actual conduct in litigation. And he adds nothing, no facts to support that allegation. The idea that confusion, which is really an ancillary of what he's saying, I would have paid it, is pretty clear at this point. Confusion is not an Article III injury. As are the other ones that he didn't really mention. The loss of sleep and stress, being subject to collection activity is a stressful activity. Being involved in litigation is a stressful activity. Losing sleep is a consequence of those. I think every lawyer in this courtroom probably can say last night they were under stress and lost sleep. That's just the nature of being involved in these kinds of activities. It's not an injury and there's enough cases at this point that nothing would support that. Hiring a counsel, again, he says that I hired it because of confusion, but putting that aside, just hiring counsel is not an injury. That was probably the best thing that had happened to him. That is what allowed him to get advice on what it is he was confused about. It can't be an injury. Why would he sit here and say participating in the legal process with competent counsel means you're injured? It's what allowed him for three years to fight off that case. So your view is that if a debt collector blatantly violates the statute, making claims that are completely unjustified, and the target of that effort is confused, distressed, loses sleep, hires a lawyer who tells him don't worry about it, they're in violation of the law, and they have not a legal leg to stand on in the court will throw out their claims. There's no Article III standing for a claim under the Act. There's enough cases at this point that would affirm that what you just said is accurate. In this circuit, that's true. Would you agree that under constitutional law we recognize standing for claims for emotional distress and invasions of privacy, for example? I believe so. And that the common law recognizes such injuries? I believe so. Emotional distress is actionable under the common law, right? Right. So why not under the Fair Debt Collection Practices Act? He hasn't alleged emotional distress here at all. As a matter of fact, he was asked in discovery in the interrogatories, request to produce, and request to admit, do you have any emotional distress? What is it? And he's answered unequivocally, none. He's asked, do you owe this money? No, I deny I owe this money. If he had answered that differently, do you think we would have standing? If he had answered and established, well, we were in a factional inquiry, they have to establish that the words statutory attorney's fees and a wherefore clause caused emotional distress and supported that with facts, possibly. It might be a different scenario. But he's absolutely completely contradicted that, though. So we're not there. And he had plenty of time. He answered the mandatory initial discovery. He answered that. Nothing about damages other than statutory. As I said already, the interrogatories, request to produce, request to admit. That's the record. And it makes complete sense. I don't think anybody could say there was a wherefore clause that talked about statutory attorney's fees, and that's what sent me over. That's what caused me the emotional distress sufficient for the pleading requirements to establish emotional distress. It makes no sense. I get that he was subject to a lawsuit, a collection lawsuit. If anything, based on his denials and discovery of owing the debt, that could be traceable to the damage you're talking about. That could be. But it's way too tenuous, speculative, and absolutely contradicted by record that those three words in the wherefore clause are what caused any such injury. And I think Judge Coleman hit it amongst other things right. That's such a cynical view of what would happen in the collection case. I know she was a former state court judge. She probably knows. It's not like they're novices. This is what the judges do all day long. They're not going to just award money in a wherefore clause because there's a couple words there. And he never did that. If there was such a serious, those three words were so serious, in three years of that litigation in Circuit Court of Cook County, did his lawyers do anything in regards to striking that? He certainly alleges nothing. They didn't. They never challenged it. The only challenge was to the debt itself. At this point, the items of injury under the case law here, and even under the scenarios you're talking about, have been rejected, and there's not enough facts to even come close to establishing some of the cases you talked about. Would you agree that the plaintiff's original complaint was sufficient to allege standing under our circuit's case law at the time it was filed? It was filed three months after Casillas. It was filed many years after Casillas. Casillas was a Fair Credit Reporting Act case, right? No, it was a Fair Debt case.  By that time, I mean, the Article III issued in Bouncing Around, he specifically had on page one of it, two of his complaint, a whole section called standing. He knew about it. Everybody knows about it. Everybody knew about it in this field of law. Even before the opinion came down, that was what was being done. And then he alleged facts later. The claims and the causes of action, all the facts that support those never changed in the first pleading to the second pleading. He added a few bells and whistles to try to establish some type of an injury, but nothing really new changed. And, again, it was not sufficient. So I don't believe the original complaint was sufficient. We, the defendants, we've co-confirmed, we filed a motion to dismiss on the merits. We think the case is pretty weak on the merits itself. And Unifund filed a 12-1 motion, so we kind of came at it both ways. We were comfortable with whatever way the court wanted to go. Thank you. I stand corrected. I was looking at Casillas, so I was confusing it with the Fair Credit Reporting Act case. Well, there was a degeneracy of a lot of them, especially in the Supreme Court with the FCRA cases, obviously Ramirez. And I recognize the law has changed somewhat, but one of the things that's been discussed in some of the sense. It's changed a lot. The landscape's moved a little, okay? 180 degrees. But one of the comments that have been made in some of those dissents is, you know, you're shutting down the courtroom. This is not in a plea, necessarily. I'm sorry? By taking this position somehow, the court is shutting out people from the courtroom. And I can guarantee that's not the case. I practice in the Seventh Circuit, Illinois, Indiana, and Wisconsin. We've got offices there, as in other places, and I can guarantee that these rulings have not slowed down the filing of fair debt cases. There are many, many being filed in the Circuit Court of Cook County and elsewhere in Indiana and Wisconsin. These rulings have not hampered that or slowed that down. In fact, there's also been many arbitrations under AAA under these cases. A lot of the smaller individual fair debt cases are being processed that way fairly quickly. So these rulings, to the extent it's relevant and comes up in some of those dissents, I want to clarify that I don't believe anybody is being harmed or losing their rights to prosecute. It may not be in federal court sometimes, but we were also in state court a lot anyhow before with counterclaims and other reasons. What are the state courts doing on standing questions in these cases? Well, Illinois, as we probably know, is a pretty low bar, like New Jersey. Wisconsin seems fairly low, although there are some cases that bounce around that, getting to, I believe, the Wisconsin Supreme Court on these fair debt types of cases. We'll find out. So they're not being knocked out, that's for sure. We're litigating them. So, for instance, I'm not sure you haven't seen these, but a whole slew of types of cases on the FDCPA, the Hunstein case, others, they're being litigated on the merits in state court. So I think my time has just thawed up. I appreciate it. We request that the order be affirmed. Thank you very much. Mr. Casella, your time has expired, so we'll take the case under advisement.